**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CARRIER CORPORATION, | CIVIL ACTION NO: |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| EDWARD BONESSI, | |
| Defendant. | MAY 29, 2024 |

# COMPLAINT

Carrier Corporation ("Carrier" or "Plaintiff") for its Complaint against the Defendant Edward Bonessi ("Bonessi"), alleges and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Carrier is a corporation organized under the laws of the State of Delaware, with its principal place of business in Florida.

2. Bonessi is a Connecticut citizen who resides in Woodmont, Connecticut.

3. This action arises under the Defend Trade Secrets Act (18 U.S.C. §§ 1832 *et seq*.), Connecticut statutory and common law, and Bonessi's contractual obligations to Carrier.

4. This Court has jurisdiction over the subject matter of this case pursuant to at least 28 U.S.C. §§ 1331 and 1338(b).

5. This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because these state law claims are so related to Carrier's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

1

6. This Court has personal jurisdiction over Bonessi because Bonessi resides and is domiciled in the State of Connecticut and this judicial district.

7. Venue is proper in the United States District Court for the District of Connecticut pursuant to 28 U.S.C. § 1391(b).

## ALLEGATIONS COMMON TO ALL COUNTS

### *The Business and Trade Secret Information of Carrier*

8. Carrier is a premier designer, manufacturer, and service provider of heating, ventilation, air conditioning, refrigeration, and fire and security equipment. Carrier's products and services are offered throughout the world.

9. In order to better serve its customers and promote its business, Carrier has devoted significant financial resources to the development and refinement of information tools, technology, and systems.

10. The results of these efforts are reflected, in part, in proprietary databases, computer programs, and business plans ("Carrier Confidential Information").

11. Carrier has invested substantial resources in developing this Carrier Confidential Information, and the information is not generally known or readily ascertainable by those outside Carrier.

12. Carrier has taken reasonable measures to maintain the confidentiality of the Carrier Confidential Information by, among other things, marking documents containing confidential information as confidential, restricting access to confidential information and requiring employees who assist in the development and collection of this information to agree to maintain the confidentiality of the information and use it only in connection with the business of Carrier.

13. In addition, and in a further effort to protect Carrier Confidential Information, Carrier maintains a computer system that is password protected on which it stores portions of its Carrier Confidential Information.

*Bonessi and His Relationship with Carrier*

14. Bonessi began as an employee of Carrier in May of 2021 and, until his separation from employment, his role was as an Enterprise Account Manager for Carrier's Building Solutions Group.

15. As an Enterprise Account Manager, Bonessi had primary and direct responsibility for Carrier's HVAC sales business to select accounts in Carrier's Higher Ed & K-12 group, particularly in the area of K-12 educational customers, including school systems and districts. This included responsibilities for acquiring new customers, renewing current customers, and managing customer relationships.

16. In his role as Enterprise Account Manager, Bonessi had access to and developed Carrier Confidential Information and trade secrets, including but not limited to, customer and supplier contacts, confidential information about customers, pricing, margins, business plans, financial data, customer strategies, revenue, profit, as well as contracts, invoices, work orders, customer equipment lists, and more.

17. As an employee of Carrier, Bonessi took part in the Carrier Global Corporation Sales Incentive Plan. In exchange for the benefits provided by the SIP, which included substantial sales incentive awards, Bonessi agreed to the terms and conditions set forth in Carrier's Sales Incentive Plan 2023 ("SIP"), which Bonessi executed on March 30, 2023. As a condition of participation in the SIP, Bonessi agreed to the following provision, contained in the SIP:

**11.7. Post-Termination Relief**

The Participant acknowledges that during his/her employment, he/she will be provided with, develop, and use Trade Secret and Confidential Information belonging to the Company. The Participant recognizes and agrees that the company has a legitimate business interest in maintaining the confidentiality of its Trade Secret and Confidential Information and a legitimate need to protect itself from improper or unfair competition. . . . Examples of Trade Secrets or Confidential Information include, but are not limited to, customer and supplier contacts, confidential information about customers, pricing, margins, business plans, business strategy, marketing plans, financial data, [and] business and customers strategies . . .

18. Bonessi, in the same provision of the SIP, agreed that:

If the Participant violates the foregoing restrictions, he/she agrees that the Company in its sole discretion may require the participant to repay to the Company the sum of all Sales Incentive Awards paid to the Participant by the Company during the twelve-month period preceding the date of the Participant's termination from the Company. The Participant further agrees that remedies at law may be inadequate for protecting the Company against violations set forth in this section, and therefore agrees that, in addition to the ability to recoup Sales Incentive Awards paid under the Plan, the Company shall be entitled to preliminary and permanent injunctive relief, temporary restraining order, or other equivalent relief, restraining the Participant from any actual or threatened breach of this section, without the necessity of proving actual damages or posting of a bond.

19. In the period between January 31, 2023 and January 31, 2024, Bonessi received approximately $48,555.80 in Sales Incentive Awards under the SIP.

*Bonessi's Separation from Employment*

20. On or about January 17, 2024, Bonessi was informed by Rusty Steele, Managing Director of Carrier Enterprise Solutions for Carrier Corporation, that his position with Carrier was being eliminated.

21. As part of his separation, Carrier offered, and Bonessi accepted, a severance package that included a lump sum payment, healthcare benefits, and outplacement services, among other benefits (the "Severance Agreement").

22. The Severance Agreement includes Bonessi's agreement to "surrender to Carrier Corporation on or before the Termination Date all written materials and all copies thereof, and all information stored in computer memories or otherwise that are in his/her possession or control and that pertain to the business or affairs of Carrier Corporation or Carrier."

23. The Severance Agreement includes Bonessi's agreement "that he/she will not directly or indirectly provide to any person or entity any confidential information … relating to the business of Carrier Corporation or Carrier," including "any information that is confidential, secret, proprietary, privileged or otherwise not generally known in the industry in which Carrier Corporation or Carrier has conducted its business, and which pertains directly or indirectly to the business activities or services of Carrier Corporation …."

24. Bonessi's last day of employment with Carrier was January 31, 2024.

*Bonessi's Theft of Carrier Confidential Information*

25. After he was informed of his position being eliminated, and without Carrier's knowledge or consent, Bonessi transmitted seventeen emails from his Carrier email account to his own personal email account prior to his last day of employment, a number of which contained Carrier Confidential Information from Carrier's secure networks, including but not limited to the below examples, and also transferred large volumes of data using his Carrier-issued laptop to his personal Google Drive cloud storage account.

26. On January 19, 2024, Bonessi sent an email from his Carrier email account to his personal email account, attaching a zip file containing sensitive customer information, including a report containing information concerning plans for to increase sales and information relating to feedback and preferences from specific customer contacts for educational accounts, spreadsheets containing detailed information about "pipeline opportunities" for specific customer contacts within

5

Bonessi's area of responsibility, including notes as to customer touch points and plans for meetings to discuss business opportunities.

27. On January 21, 2024, Bonessi accessed a Google Drive cloud storage site on his Carrier laptop and uploaded a large amount of data.

28. Also on January 21, 2024, Bonessi sent two emails from his Carrier email account to his personal email account, attaching meeting notes from conversations with contacts at a particular customer account discussing customer needs and potential opportunities for sales for Carrier.

29. On January 25, 2024, Bonessi sent an email from his Carrier email account to his personal email account, attaching presentation materials from Carrier Building Services Group meetings. Those presentations, which included express labeling indicating that the materials were "Proprietary and Confidential," contained highly confidential and proprietary Carrier Confidential Information, including business plans, internal organizational charts, project statuses, financial information, internal business forecasts, identification of Carrier customers and Carrier target customers, customer opportunities, anticipated costs of customer projects, and steps taken and planned with respect to different customers and projects.

30. On January 25, 2024, Bonessi sent an email from his Carrier email account to his personal email account, attaching a zip file containing spreadsheets with contact information concerning hundreds of New Jersey-based educational entities, as well as project information and associated dates and financial information, including cost information.

31. On January 25, 2024, Bonessi sent an email from his Carrier email account to his personal email account, attaching a zip file containing spreadsheets with contact information concerning hundreds of Ohio-based educational entities, as well as product pricing information, product documentation and customer proposal documents.

32. On January 28, 2024, Bonessi sent an email from his Carrier email account to his personal email account bearing the subject line "**Key Account Contact Information**" (emphasis added), which contained a spreadsheet detailing closed orders for Bonessi, including products, customer accounts, names of opportunities and sale prices.

33. The information referenced above in the emails Bonessi sent to himself could be used to compete with and undercut Carrier with respect to its customers in the Higher Education and K12 vertical within which Bonessi had responsibility during his employment for Carrier, and its use by Bonessi on behalf of himself or a competitor would cause Carrier significant irreparable harm.

*Bonessi Did Not Have Permission to Steal and Transmit Carrier's Confidential Information And Has Subsequently Admitted to Having Stolen the Information*

34. At no time did Carrier authorize Bonessi to transmit any Carrier information, let alone Carrier Confidential Information, to Bonessi's personal email account(s), his personal cloud storage account(s), or to any other person or entity. Indeed, Bonessi's doing so violates Carrier corporate policies.

35. In fact, Bonessi agreed in the SIP to maintain the confidentiality of Carrier Confidential Information, including "customer and supplier contacts, confidential information about customers, pricing, margins, business plans, business strategy, marketing plans, [and] financial data...."

36. Bonessi also agreed in the Severance Agreement to return all Carrier Confidential Information and not to disclose it.

37. Upon information and belief, Bonessi still possesses Carrier Confidential Information.

*Bonessi's False Excuses for His Theft of Carrier's Confidential Information*

38. On April 4, 2024, Carrier sent Bonessi a letter informing Bonessi that it was aware of his misappropriation of Carrier's Confidential Information, reminding him of his ongoing

confidentiality obligations, reserving Carrier's rights, including its right to pursue legal action, and notifying Bonessi of his obligation to preserve and maintain relevant evidence.

39. Also on April 4, 2024, Bonessi responded to Carrier's April 4, 2024 letter, admitting his theft of Carrier Confidential Information and stating that he did not believe the information to be considered "trade secrets or pricing," stating:

> No need for litigation. I figured you could see anything I sent. Most of which was personal items and photos that I happened to have on my Carrier computer. The rest would have been final year end sales reports but nothing I thought would be considered trade secrets or pricing. I was a business development person that just connects Carrier brand sales people to customers that were friends of mine.
>
> Just let me know what you want.

40. In truth, the emails that Bonessi sent to himself contained Carrier Confidential Information, the disclosure of which could cause irreparable harm to Carrier's business, and Bonessi had no right to transmit such information outside of Carrier's systems.

41. Bonessi's proffered excuse for his intentional and impermissible theft of Carrier's Confidential Information is false with respect to at least some of the Carrier Confidential Information Bonessi misappropriated.

*Bonessi's Possession of Carrier's Confidential Information Is Causing Immediate, Irreparable Harm to Carrier*

42. The Confidential and trade secret Carrier information that Bonessi had access to while working for Carrier and transmitted to himself, including Carrier Confidential Information, would be of use to competitors in competing with Carrier for the sale of products, services, and HVAC solutions to Higher Ed and K-12 customers/accounts throughout the country.

43. Bonessi's use or disclosure of Carrier's confidential and trade secret information, including Carrier Confidential Information, would damage and cause irreparable harm to Carrier by,

among other things, impairing Carrier's ability to retain existing customers/accounts, engage new customers/accounts, and maintain the confidentiality of Carrier's confidential and proprietary pricing and business model.

44. Carrier requires injunctive relief in order to prevent Bonessi from further violating his obligations to Carrier and to prevent Bonessi from unlawfully using or disclosing Carrier's confidential and trade secret information, including Carrier Confidential Information.

45. These wrongful acts on the part of Bonessi have caused and will continue to cause irreparable harm to Carrier.

## COUNT I
## TRADE SECRET MISAPPROPRIATION IN VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. §§ 1832, 1836 *et seq.*)

46. Carrier realleges and incorporates by reference the allegations of paragraphs 1 through 42 as if fully set forth in this paragraph.

47. Carrier owns and possesses confidential and trade secret information, as alleged above.

48. Carrier's confidential information, including the Carrier Confidential Information, is crucial to the success of its business. Carrier makes substantial efforts to keep its Carrier Confidential Information from its competitors and the public. Carrier has taken, at all relevant times, reasonable efforts to maintain the secrecy of its Carrier Confidential Information, including requiring its employees, as a condition of employment, to abide by strict policy provisions concerning the use and disclosure of Carrier Confidential Information, and by requiring all persons accessing Carrier's repositories and databases to have personalized authentication credentials in order to access such repositories/databases. The measures that Carrier takes are reasonable under the circumstances to maintain the information's secrecy.

49. Carrier Confidential Information set forth above constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836, *et seq.*, because Carrier has taken reasonable measures to maintain the secrecy of such assets and those assets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. Among other things, Carrier's competitors would obtain economic value from the use and the disclosure of Carrier Confidential Information, including Carrier Confidential Information available to Bonessi in his position at Carrier.

50. Bonessi has misappropriated Carrier Confidential Information. Moreover, Bonessi acquired and/or derived knowledge and custody of Carrier's trade secrets through improper means, including unauthorizedly transmitting that information to Bonessi's personal email account. As such, Bonessi has misappropriated Carrier's trade secret assets by engaging in conduct prohibited by 18 U.S.C. §§ 1832 and 1836, *e.g.,* 1839 (5)(A) and (5)(B).

51. Through his unlawful actions, Bonessi has acquired knowledge and custody of Carrier's trade secrets. Bonessi knew or had reason to know the Carrier Confidential Information was confidential. For example, Bonessi knew that, when he had access to the Carrier Confidential Information while employed by Carrier, he had a duty to maintain the secrecy of that information. Bonessi was aware of the employment policies of Carrier forbidding the unauthorized access, use, or transmission of the Carrier Confidential Information.

52. This information is used in interstate commerce by Carrier – a Delaware entity with its principal place of business in Florida – which utilizes this trade secret information in its business in Florida and California, and other states within the United States.

53. Bonessi's actions have therefore been in and affected interstate commerce.

54. Bonessi's conduct, including but not limited to his knowing and unlawful misappropriation of Carrier's trade secrets as alleged above, has caused Carrier irreparable harm. Unless restrained and enjoined, Bonessi will continue to engage in such acts. Carrier's remedy at law is therefore inadequate to compensate it for the past and threatened injuries and thus Carrier is entitled to injunctive relief as provided for by the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(A). Carrier also is entitled to and prays for all other remedies under the Defend Trade Secrets Act, 18 U.S.C. § 1836, including damages pursuant to 18 U.S.C. § 1836(b)(3)(B).

55. Each of the aforementioned acts was done by Bonessi willfully and maliciously, with the deliberate intent to injure Carrier and with the conscious disregard of Carrier's rights, thus entitling Carrier to an award of enhanced damages pursuant to 18 U.S.C. § 1836(b)(3)(C). Carrier is further entitled pursuant to 18 U.S.C. § 1836(b)(3)(D) to an award of its reasonable attorneys' fees.

**COUNT II**
**TRADE SECRET MISAPPROPRIATION IN VIOLATION OF THE**
**CONNECTICUT UNIFORM TRADE SECRETS ACT (CONN. GEN. STAT. § 35-50 *et seq*)**

56. Carrier realleges and incorporates by reference the allegations of paragraphs 1 through 52 as if fully set forth in this paragraph.

57. Carrier owns and possesses substantial confidential and trade secret information that it utilizes in its business, as alleged above. These trade secrets derive independent economic value from not being generally known or readily ascertainable by those who could obtain economic value from their disclosure or use. These trade secrets include customers lists, contact lists, contracts, Carrier profit margin information, and Carrier financial data, among other things. This information constitutes "trade secrets" under the Connecticut Uniform Trade Secrets Act ("CUTSA"), Conn. Gen. Stat. § 35-51.

58. Carrier has taken reasonable efforts to maintain the secrecy of its trade secrets, including, without limitation, maintaining the trade secrets behind a password-protected computer system and marking many of its trade secret documents as confidential. Carrier also has policies prohibiting the transmittal or disclosure of its trade secrets outside of Carrier, restrictions on the use of personal email for business, limitations on visitor access, termination of access upon termination of employment, among other efforts.

59. These trade secrets include, *inter alia*, the Carrier Confidential Information identified above, all of which provide Carrier with substantial financial advantages over its competitors.

60. Bonessi acquired and continues to possess Carrier's trade secrets without Carrier's consent, in violation of CUTSA.

61. Unless enjoined by this Court, Bonessi's misappropriation of Carrier's trade secrets will cause (and have caused) significant irreparable harm to Carrier, and Carrier has no adequate or other remedy at law for such acts and threatened acts. Irreparable harm is presumed when trade secrets, such as Carrier's trade secret information, have been misappropriated. As such, Carrier is entitled to a temporary restraining order and preliminary and permanent injunctive relief.

62. As a direct, proximate, and foreseeable result of Bonessi's misappropriation, Carrier has been damaged in an amount to be determined at trial.

63. Bonessi's actions were and are willful and malicious, thus justifying an award of exemplary damages and attorney's fees.

**COUNT III**
**BREACH OF DUTY OF LOYALTY TO CARRIER – MISAPPROPRIATION OF CARRIER CONFIDENTIAL INFORMATION**

64. Carrier realleges and incorporates paragraphs 1 through 60, as if fully set forth in this paragraph.

65. As an employee of Carrier, Bonessi owed a duty of loyalty to Carrier while employed by Carrier, a duty to maintain in confidence the confidential information and trade secrets made known to him as an employee or developed by him as an employee of Carrier, and a duty not to misappropriate, disclose or use for his own benefit confidential information of Carrier. Bonessi affirmed these duties by, among other things, executing acknowledgements of Carrier policy, as set out in part in the SIP.

66. Bonessi breached his duties to Carrier.

67. As a result of Bonessi's conduct, Carrier has suffered damages and will continue to suffer damages, entitling Carrier to compensatory damages in an amount to be determined.

68. Because Carrier has suffered and continues to suffer irreparable harm as a result of Bonessi's breaches of his duties to Carrier, Carrier is entitled to an injunction enjoining Bonessi from any further breaches of his duties to Carrier, use of any information or business opportunities made known to him as a result of his being an employee of Carrier and return of all Carrier property.

## COUNT IV
## UNJUST ENRICHMENT AND RESTITUTION

69. Carrier realleges and incorporates paragraphs 1 through 65, as if fully set forth in this paragraph.

70. Bonessi's unlawful conduct as detailed herein, including but not limited to, his illegal intrusions into Carrier's protected computer system for the purpose of (and with the effect of) unlawfully competing with Carrier, and trading on Carrier's investments in its technology, unjustly enriched Bonessi at the expense of Carrier. Bonessi received these benefits through fraud, as detailed above.

71. As a result of Bonessi's conduct, Carrier has been damaged and Defendants have been unjustly enriched, all to Carrier's detriment.

72. Bonessi should be required to disgorge all unjust enrichments, provide restitution to Carrier, and a constructive trust should be imposed for Carrier's benefit on all intellectual property rights unjustly acquired using, in whole or in part, any trade secret or intellectual property belonging to Carrier.

**PRAYER FOR RELIEF**

WHEREFORE, Carrier respectfully prays that this Court enter judgment against the Defendants:

(1) Compelling Bonessi to return all property wrongfully obtained, including Carrier's trade secrets, know-how, and other confidential information;

(2) Permanently enjoining Bonessi from making any use or disclosure of Carrier's trade secrets, know-how, and other confidential information, all of which were wrongfully taken by Bonessi, or utilizing derivative information;

(3) Permanently enjoining Bonessi from engaging in other acts of unfair competition against Carrier;

(4) Awarding Carrier $48,555.80 in Sales Incentive Awards paid to Bonessi in the period between January 31, 2023 and January 31, 2024 as a result of Bonessi's breach of the SIP;

(5) Awarding past and future damages for the harm caused by Bonessi's wrongful acts, plus prejudgment and post judgment interest;

(6) Awarding Carrier an accounting for all of Bonessi's gains obtained by his wrongful conduct, and discovery sufficient to confirm the scope of those gains;

(7) Awarding punitive damages and enhanced damages as allowed under the applicable statute or the common law;

(8) Awarding Carrier double damages and attorneys' fees pursuant to 18 U.S.C. 1836 and other applicable statutes, for Bonessi's willful and malicious misappropriation of Carrier trade secrets;

(9) Awarding Carrier attorneys' fees and costs of this action; and

(10) Awarding Carrier all other relief as may be just and proper.

## JURY DEMAND

Carrier demands a trial by jury on all issues in this case, insofar as permitted by law.

Respectfully submitted,

PLAINTIFF,
CARRIER CORPORATION

By: */s/ Justin E. Theriault* _____
Justin E. Theriault (ct28568)
JACKSON LEWIS P.C.
90 State House Square, 8th Floor
Hartford, CT 06103
Tel: (860) 522-0404
Fax: (860) 331-2588
Email: justin.theriault@jacksonlewis.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CARRIER CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>EDWARD BONESSI,<br><br>    Defendant. | CIVIL ACTION NO: |

**VERIFICATION**

I, Rusty Steele, certify as follows:

1. I am the Managing Director of Carrier Enterprise Solutions for Carrier Corporation, the plaintiff in this action.

2. I have read the above and foregoing Verified Complaint.

3. The facts stated in the foregoing Verified Complaint are true and correct to the best of my knowledge and information.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Rusty Steele

Dated: 5/24/24

16

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically and was sent on this, the 29th day of May, 2024, to the following parties and counsel of record as follows:

<u>By UPS and electronic mail:</u>

>Edward Bonessi
>83 Beach Ave
>Woodmont, CT 06460
>Email: ed.bonessi@gmail.com

>*/s/ Justin E. Theriault*
>Justin E. Theriault

4892-2108-5885